**James COURTRIGHT, Relator,**

v.

**AMERICAN CRYSTAL SUGAR COMPANY, et al., Respondents.**

**No. 50788.**

Supreme Court of Minnesota.

Oct. 16, 1981.

Cahill, Gunhus, Streed, Grinnell, Jeffries & Klinger, Moorhead, for relator.

C. Douglas Allert, Minneapolis, for respondent.

TODD, Justice.

The employee obtained a writ of certiorari to review a divided decision of the Workers' Compensation Court of Appeals determining that he had sustained a 5-percent permanent partial disability as a consequence of a November 5, 1975, compensable personal injury and that any temporary total disability experienced after March 1, 1976, lacks a causal relationship to such

injury. Upon the basis that the findings lack sufficient evidentiary support, the decision is reversed and the matter is remanded for further proceedings.

The record indicates that the employee sustained a compression fracture of a low back vertebra in a service-related accident shortly after enlisting in the Air Force in 1946. As a result, the employee periodically experienced muscle spasms which required heat treatments and rest for short periods. Although he was nevertheless able to perform his duties, he was required to resign in 1963 when a medical examination revealed the compression fracture and degenerative joint disease resulting in a 20-percent permanent impairment of his back; chronic muscle spasms of the back and legs; and generalized knee pathology rated at a 10-percent permanent impairment.

After his retirement from the service, the employee held several manual labor jobs and was injured on November 5, 1975, while loading a 100-pound bag of sugar on a pallet for the employer. The employee recalled that the pain struck in the middle of his back "like hot water" and then radiated to both legs. With the exception of a 2-day period in March 1976, the employee has not worked since. He received temporary total disability benefits for the period from November 9, 1975, to March 1, 1976, in addition to those benefits attributable to the 5-percent permanent partial disability, until the employer filed a notice of discontinuance of payment in June 1976.

A hearing was held to consider the employee's objections to the discontinuance which were predicated upon his claim of entitlement to additional permanent partial disability and to continuing temporary total disability benefits. In support of his claims, the employee detailed a medical history that he had been hospitalized for treatment shortly after the occurrence, that he had experienced periodic back and leg pain, and finally that he had twice received medical treatment after the initial hospitalization. He also related that his back "went out" in April 1976 while he repaired an automobile and in December 1976 when he misstepped,

causing a twisting injury to his back. He testified that he cannot perform manual labor and is unable to obtain employment due to his back condition.

Three medical experts, including two board-certified orthopedic surgeons and an orthopedic resident, had examined the employee between 1976 and 1978. Conflicting medical opinions resulted from the examinations. During a medical examination performed for the employer on January 14, 1976, Dr. Jerome Bernhoft recorded the employee's complaints of low back but not radiating pain. X rays exhibited degenerative arthritic changes in his spine, and Dr. Bernhoft expressed the opinion that the employee sustained a 5-percent permanent partial disability resulting from a lumbosacral strain superimposed on an abnormal low back. Additionally, he recognized that the employee definitely had a preexisting disability but stated no opinion as to its extent. Pursuant to the initial examination, Dr. Bernhoft concluded that the employee might resume work by January 14, 1976, subject to restrictions against prolonged bending or standing, and lifting more than 25 pounds. Two subsequent examinations in April and July 1976 did not change the doctor's opinions.

In January 1977, pursuant to a referral for possible surgery, Dr. David Hahn examined the employee at an army hospital in Denver and diagnosed a herniated disc at the L5–S1 level, impairment of the S–1 nerve root, and a moderately severe amount of osteoarthritis of the lumbosacral spine. In Dr. Hahn's medical opinion, the employee had not had a disc injury and nerve root impairment prior to the work incident, but he thereafter developed a chronic disc condition which became acute in December 1976.

Dr. A. E. Culmer examined the employee on March 28, 1978, and diagnosed chronic low back pain secondary to degenerative changes. Assuming that the employee had experienced pain in the back and right leg since the work incident in November 1975, and had not had leg pain prior to that time, the doctor expressed the opinion that the employee had probably protruded a disc in

the work incident. Dr. Culmer admittedly based his opinion on the fact that the employee had not experienced radiating pain prior to the incident; he also stated that his opinion was unaffected by the incidents in April and December 1976 in which the employee sustained injuries because a relatively minor trauma might precipitate complaints in a back that is already injured. He also felt: (1) that the employee could not perform manual labor and, instead, sedentary work with restrictions against bending and lifting was indicated; (2) that he had sustained a prior permanent partial disability of 20 percent of the back as a result of the 1947 injury; and (3) that he had sustained an additional 20-percent disability as a result of the 1975 injury.

After finding that the 1975 work injury had produced a 20-percent permanent partial disability of the employee's back which was superimposed on a 20-percent preexisting disability and that the employee's temporary total disability had continued, a compensation judge awarded the employee compensation for a 40-percent permanent partial disability of the back and for temporary total disability from March 1, 1976, to continue as long as he remained so disabled.

Pursuant to the employer's appeal, the majority of the Workers' Compensation Court of Appeals set aside the findings that the employee continues to be totally disabled and that he had sustained a 40-percent permanent partial disability. The majority, instead, substituted its findings that the injuries of April and December 1976 were separate intervening injuries, that any temporary total disability sustained subsequent to March 1, 1976, was not causally related to the work injury of November 1975, and that the employee had sustained a 5-percent permanent partial disability.

These findings reflected Dr. Bernhoft's opinions that the employee sustained only a lumbosacral strain in November 1975 and that he was capable of working by January 14, 1976, subject to the specified restrictions. The majority apparently relied on Dr. Bernhoft's opinions, stating that the "employee denied he had any pain in his legs" at the time of the doctor's examination on January 14, 1976, and inferred that the employee had experienced such pain only subsequent to that time. There exists, however, substantial evidence in the record as a whole that the employee first experienced pain radiating into his legs at the time of the work incident in November 1975 and has since periodically experienced such radicular symptoms. The appearance of such pain at that particular time was a significant reason for the other experts' opinions that the employee had suffered a disc injury in November 1975, rather than a strain or other temporary aggravation of a preexisting back condition. If Dr. Bernhoft's diagnosis that the employee had suffered only a temporary strain is based on the assumption that the employee had not experienced those radicular symptoms, both the diagnosis and the doctor's opinions based thereon do not furnish a sufficient basis for the findings relating to the employee's disabilities.

The majority opinion also reveals an erroneous understanding that a likely cause of the disc injury, in Dr. Hahn's opinion, had been either the work incident or the employee's subsequent twisting of his back in December 1976. A reading of Dr. Hahn's testimony as a whole demonstrates that he did not express the opinion ascribed to him and that in fact, both he and Dr. Culmer stated that the presence of radicular symptoms for the first time immediately after the work injury led them to believe that the employee had sustained a disc injury then.

Finally, the majority opinion also rejected Dr. Culmer's opinion on the ground that it had been based on a hypothetical question which did not include the episodes occurring in April and December 1976. As the record establishes that these facts were supplied on cross-examination, there exists no reason to remove his testimony from consideration.

■ In spite of the often-applied principle that the resolution of conflicts in the opinions of medical experts is within the province of the court of appeals, in view of the foregoing circumstances, we are unable to conclude that the findings relating to the employee's disabilities have sufficient evidentiary support. Consequently, these findings must be reversed and the matter

remanded for further consideration consistent with the concerns that we have expressed herein.

The employee urges in addition that the employer should be required to pay compensation benefits for the total permanent partial disability to his back even if but a part of that disability is attributable to the work injury. Under the facts of this case, we find that argument to be persuasive in light of the dispositive authority contained in *Vanda v. Minnesota Mining & Manufacturing Co.*, 300 Minn. 515, 218 N.W.2d 458 (1974); *Wallace v. Hanson Silo Co.*, 305 Minn. 395, 235 N.W.2d 363 (1975); *Byrd v. State*, 305 Minn. 398, 234 N.W.2d 589 (1975).

Employee is awarded attorneys fees of $400.

Reversed and remanded.

OTIS, Justice (dissenting).

The majority holds that the findings of the Workers' Compensation Court of Appeals concerning the extent of relator's work-related injuries, are not supported by the evidence because of three errors which it finds in the court's decision.

First, the majority holds that the medical expert on whom the court relied, Dr. Jerome Bernhoft, was mistaken in assuming relator had not experienced radicular symptoms at the time he was injured. In reaching this conclusion, the majority rejects the doctor's testimony that the "employee denied he had any pain in his legs" when examined after the November 5, 1975 injury. The majority, in effect, substitutes its own findings, based on conflicting contrary evidence.

Second, the majority holds that as a matter of law the court of appeals was not justified in rejecting Dr. Culmer's opinion that relator suffered a twenty percent permanent partial work-related disability which was not affected by the subsequent April and December 1976 unrelated accidents. In so doing, the majority stresses the fact that although Dr. Culmer's hypothetical excluded the two unrelated injuries, he adhered to his opinion when they were called to his attention on cross examination.

I submit that the court of appeals was fully aware of the doctor's cross examination and nevertheless stated "We reject Dr. Culmer's opinion in total. We accept Dr. Bernholt's opinion, which together with the evidence furnished by Dr. Hahn, clearly indicates that this employee has been fully compensated for his injury based upon the preponderance of the evidence in this record."

Third, the majority holds that the court of appeals was not justified in rejecting the testimony of Dr. David Hahn because, in the opinion of the majority, the court misread his testimony. Again, the court had before it Dr. Hahn's statement that relator's back problems "might" have stemmed from the unrelated fall from a stair, "if he had not already told me that he had had the same sort of symptoms with the sugar company several years earlier." I do not construe the language in the court's memo to the effect that Dr. Hahn was of the opinion relator's problem "could have been caused by the fall on the stair" and that the fall was "just as likely" the cause of relator's disc problem, to mean more than that relator's symptoms were consistent with a fall, unless relator's complaint of prior symptoms was accepted as persuasive. Clearly the court had the right and the duty to sort out the evidence it found convincing, and was not limited to accepting or rejecting all or none of a witness' testimony.

With deference to my colleagues, it ill behooves us to recognize "the often-applied principle that the resolution of conflicts in the opinions of medical experts is the province of the court of appeals" and thereupon decide that the court misread the expert's testimony because the court construed the medical opinions differently from what we might have done as fact finders. Accordingly I would affirm the decision of the court of appeals.

PETERSON, Justice (dissenting).

I join in the dissent of Justice Otis.